UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| LINDA G. BARTON ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:04-CV-140 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| CHATTANOOGA– HAMILTON COUNTY ) | |
| HOSPITAL AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

This is a case arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Before the Court is Defendant Chattanooga–Hamilton County Hospital Authority's ("Defendant") motion for summary judgment (Court File No. 23). In support of this motion, Defendant has submitted a supporting memorandum (Court File No. 24) and various supporting depositions, affidavits, and documents (Exhibits to Court File No. 24, Court File Nos. 25-30). Plaintiff Linda G. Barton ("Plaintiff") filed a response and supporting memorandum, deposition testimony, and affidavit (Court File Nos. 39, 40, 47, 50). Defendant then filed a reply brief (Court File No. 46). The Court has considered all of the foregoing in making its decision regarding summary judgment. For the following reasons, the Court will **GRANT** Defendant's motion for summary judgment on all of Plaintiff's claims (Court File No. 23).

**I.   STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S. Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it

may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. RELEVANT FACTS

Plaintiff began working for Defendant, which operates under the trade name "Erlanger Health System," in 1990 as a flight coordinator in its Air Medical Department (Court File No. 26, Affidavit of Gregg Gentry ("G. Gentry Aff.") ¶ 3). Her title changed in 1992 to communications coordinator, and she held this position in Defendant's regional communications center until Defendant terminated her employment on September 12, 2003 (*Id.*). In this position, Plaintiff coordinated dispatch of land-based ambulances and helicopter ("LifeForce") emergency services and communications between those ambulances or helicopters and hospital personnel awaiting their arrival with patients (Court File No. 28, Affidavit of Greg Hawkins ("Hawkins Aff.") ¶¶ 3-7). Plaintiff also facilitated radio traffic between regional ambulance services in Defendant's "MedComm service" (*Id.*).

Defendant's job description for this position included, among others, the following functions: "operating all base radios, information systems, and related equipment associated with the Flight Operations Center and Chattanooga MedComm"; "functions as a liaison for gathering and/or routing information by utilizing computer equipment and individual communications skills to accomplish various tasks"; and "routing of EMS field reports to the appropriate receiving facility via conventional radio or cellular pathways; the receiving, coordination and completion of LIFE FORCE/ Chattanooga MedComm related communication responsibilities . . ." (*see* Exh. A to G. Gentry Aff.). Although the job description does not expressly so indicate, Plaintiff's supervisor Greg Hawkins stated "most calls, by their nature, are received in emergency situations in which

3

seconds are critical in saving the life of a patient" (Hawkins Aff. ¶ 4). Additionally, Plaintiff was required to perform many of her job duties simultaneously, so multitasking was an essential function (Court File No. 29, Affidavit of Teddy Rogers ("Rogers Aff.") ¶ 4). The communications center handled many thousands of calls for the helicopters and ambulances, with the call volume increasing steadily during Plaintiff's tenure (*Id.* at ¶¶ 4-6).

Plaintiff was diagnosed with Parkinson's Disease in 1993 (See Court File No. 27, Affidavit of Jan Gentry ("J. Gentry Aff."), Exh. A). In late 2000 or early 2001, one of Plaintiff's coworkers reported to Hawkins Plaintiff's Parkinson's Disease appeared to be progressing, in that her responsiveness was slowing, it was taking her "too long" to answer radio or phone calls, and "at times she would have to be aroused to answer the calls" (Hawkins Aff. ¶ 8). Hawkins met with several other supervisors and discussed creating a new position for Plaintiff that would combine ambulance service billing tasks with responsibilities in the communications center on an "as-needed" basis to resolve her performance issues (*Id.* ¶ 10). Hawkins and Scott Radeker, then Defendant's air medical director, met with Plaintiff and discussed this opportunity with her, and she told them she would enjoy such a transfer, particularly since it would be less stressful than her current position (Barton Aff. at 59-62, 93-98). However, Hawkins and Radeker were unable to get the new position approved by more senior management, including Roger Forgey, who then had administrative responsibility for the communications center. Forgey stated he did not believe the position was necessary, feasible, or would resolve concerns about Plaintiff's ability to perform her job duties since she would continue to serve as a communications coordinator as needs arose (Court File No. 25, Affidavit of Roger Forgey ("Forgey Aff.") ¶ 4). However, some of Plaintiff's responsibilities were shifted to her coworkers, who took on the more stressful, multitasking

4

functions of her position, including coordinating air flights and ground ambulance services, leaving her primarily responsible for the MedComm service, except during periods of heavy traffic when Plaintiff would be responsible for all of her duties (Hawkins Aff. ¶ 11).

In July 2002, Hawkins received an e-mail about a 911 call to dispatch an ambulance to East Ridge Plaintiff missed entirely, and also stating "several units were unable to contact [Plaintiff] during a period of heavy activity" (Hawkins Aff. ¶ 12). Teddy Rogers, who became director of LifeForce communications in June 2002, noticed Plaintiff's "movements appeared to be extremely slow and she appeared to have difficulty in performing multiple tasks simultaneously, which is a critical component in her position" (Rogers Aff. ¶ 4). Steve Straughen, chief pilot for LifeForce from 1997 to 2001 and director of aviation operations from 2001 to 2002, received concerns about Plaintiff's performance beginning in 2000, such as aircraft crews not getting flight coordinates or landing zone information as quickly as they needed them, and Plaintiff dispatching the wrong aircraft on one occasion (Court File No. 30, Affidavit of Steve Straughen ("Straughen Aff.") ¶¶ 4-7). Straughen also particularly noticed the deterioration of Plaintiff's ability to multitask (*Id*.).

All of this led some combination of Rogers, Forgey and Hawkins to meet with Plaintiff to discuss her ability to perform the functions of her job in June or July 2002 (Rogers Aff. ¶ 7, *see also* Barton Depo. at 109-111). Forgey asserts he told Plaintiff he believed she needed to undergo a fitness for duty evaluation by a physician to determine whether she was able to perform her job, and directed her to human resources to arrange such an evaluation (Forgey Aff. ¶ 7). Plaintiff asserts during this meeting, although a medical evaluation was briefly discussed, she essentially was told she needed to take medical leave or retire (Barton Depo. at 110-11). Plaintiff spoke to Rogers individually after this meeting. Plaintiff asserts Rogers told her "I can't make you do anything, [but

5

if you don't take a leave of absence,] You'll be monitored. Every little mistake will be noted, and you will eventually be fired" (Barton Depo. at 122). Rogers states he told Plaintiff he had observed her having trouble performing her job, and "she would be treated like other employees and that future performance problems would be documented" (Rogers Aff ¶ 6).

Plaintiff met with human resources to discuss her options, including a medical evaluation for fitness for duty, reassignment, long-term disability benefits, Social Security benefits, retirement, and medical leave (J. Gentry Aff. ¶ 4). Plaintiff did not ever undergo a fitness for duty evaluation (*Id*. ¶ 7; Barton Depo at 110-11, 126). Instead, Plaintiff requested medical leave, asserting she was "incapacitated" because of her Parkinson's Disease, on September 4, 2002, with supporting documentation from her physician (*see* Exh. A to J. Gentry Aff.). Defendant approved this request, and Plaintiff's leave began on September 12, 2002 (J. Gentry Aff. ¶ 8). Plaintiff twice requested extensions of this medical leave, which were granted, and she was given a total of one year of medical leave (*Id*. ¶ 11). Defendant terminated Plaintiff's employment on September 12, 2003, after she did not return to work after one year of medical leave, pursuant to its employment policies (G. Gentry Aff. ¶ 3).

Plaintiff filed the instant lawsuit on May 12, 2004 alleging Defendant discriminated against her because of her disability in violation of the ADA.

### III. DISCUSSION

The ADA prohibits an employer from discriminating against a "qualified individual with a disability" because of that individual's disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

6

conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under this statute includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Plaintiff alleges Defendant discriminated against her based on her disability and their perceptions of her disability by failing or refusing to make reasonable accommodations (See Court File No. 1, Complaint). Plaintiff also claims Defendant created a hostile and harassing work environment and constructively discharged her, both in violation of the ADA (*Id*.).

### A. Failure to Accommodate

In order for Plaintiff to prevail on her claim of discrimination based on Defendant's failure to accommodate her disability, she must show in her prima facie case (1) she is disabled; (2) she was otherwise qualified for the position; (3) her employer was aware of her disability; (4) an accommodation was needed, in that a causal relationship existed between the disability and the request for accommodation; and (5) the employer failed to provide the necessary accommodation. *See Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997) (*quoting Kocsis v. Multi-Care Management, Inc*., 97 F.3d 876, 882-83 (6th Cir. 1996)). Once she has shown the elements of her prima facie case, the burden shifts to Defendant "to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship . . ." *Gaines*, 107 F.3d at 1176. However, "[i]f the plaintiff fails to establish a prima facie case, it is unnecessary to address the question of reasonable accommodation." *Id.* (*citing Jasany v. United States Postal Service*, 755 F.2d 1244, 1250 (6th Cir. 1985) (citations omitted)).

### 1. Disabled Within the Meaning of the ADA

To establish she was "disabled" within the meaning of the ADA, a plaintiff must show either: (1) she had an impairment that substantially limited one or more of his major life activities; (2) she had a record of such impairment; or (3) she was regarded as having such an impairment. 42 U.S.C. § 12102(2). Defendant, for the purposes of this motion, concedes Plaintiff is disabled within the meaning of the ADA because she has been diagnosed with Parkinson's Disease (*see* Court File No. 24, p. 14).

### 2. "Otherwise Qualified" for the Position

Defendant bases the bulk of its argument in its briefs on Plaintiff's inability to prove she was "otherwise qualified" to hold her position. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Defendant argues Plaintiff was not "otherwise qualified" for her position because she could not perform its essential functions in the quick and simultaneous manner it required. Defendant states the essential functions of the position included being able to respond quickly to telephone and radio calls, obtain necessary information concerning the nature of the emergency, dispatch aircraft and land-based ambulance services to the appropriate locale, obtain information regarding the patient's condition, and contact the receiving hospital, often simultaneously (*see* Exh. A to G. Gentry Aff.; *see also* Hawkins Aff. ¶¶ 3-7). Defendant notes the following specific examples of failures of Plaintiff to perform the essential functions of her position: Plaintiff failed to give LifeForce crews flight coordinates or landing zone information as quickly as they needed them;

8

dispatched the wrong aircraft; failed to receive and relay information vital to patient care to the hospital in time for patients' arrival at the hospital via ambulance; completely missed a 911 call to dispatch an ambulance to East Ridge; and dispatched an ambulance from a Soddy-Daisy ambulance service rather than from a closer Hamilton County service (Straughen Aff ¶¶ 4-7, Hawkins Aff. ¶¶ 8, 12 and exhibit A thereto; Rogers Aff. ¶ 6).

Plaintiff does not contest the specific lapses in her ability to perform the essential functions of her position, as listed by Defendant above, but she does seem to argue she would have been able to perform those functions with a reasonable accommodation. Part of the "otherwise qualified" inquiry is whether the plaintiff "**with or without reasonable accommodation**, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). However, Plaintiff has not alleged she could perform the essential functions of the communications coordinator position with any specific accommodation, she merely has stated "she actively discussed with management and others the possibility of transferring to another position to aid the billing clerk for the ambulance services. She was told that this would happen and it would take some of the pressure off her . . ." (Court File No. 40 at 2). Therefore, the Court presumes Plaintiff is arguing she could have performed the essential functions of *another* position with reasonable accommodation, *i.e.*, with Defendant's transfer of her to that other position. While "reassignment to a vacant position" is explicitly listed as a reasonable accommodation under the ADA, *see* 42 U.S.C. § 12111(9)(B), Plaintiff does not allege any vacant position was available into which she could transfer, and Plaintiff did not apply for any vacant positions with Defendant (Barton Depo. at 56-58). Defendant asserts it would have had to create a new position in order to accommodate Plaintiff, which it ultimately chose not to do for reasons of feasibility and necessity

9

(*see* Forgey Aff. ¶ 4).

"Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual." *Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000) (*citing Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996); *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998)). Thus, the only accommodation with which Plaintiff asserts she could perform the essential duties of her position, a transfer to another less stressful position, was not a "reasonable accommodation" under the ADA. Plaintiff has not shown she was "otherwise qualified," with or without accommodation, to perform the essential functions of her position, which is an essential element of her claim of failure to accommodate. Because she has not met her burden of proof on the "otherwise qualified" element of her prima facie case, the Court need not evaluate her alleged request for and Defendant's alleged failure to accommodate her disability. *See Gaines*, 107 F.3d at 1176.

Since Plaintiff has not made a sufficient showing on an essential element of her claim on which she has the burden of proof, *see Celotex*, 477 U.S. at 323, the Court will **GRANT** Defendant's motion for summary judgment and will **DISMISS** this claim.

### B. Hostile Work Environment

Plaintiff in her complaint next alleges Defendant "created a hostile and harassing environment after she had agreed to make a reasonable accommodation in her employment to alleviate the perception that her disability would prevent her from continuing to do her job. [Defendant's] harassment and threats of discharge, lack of re-training or failure to consider or make any reasonable accommodations for Plaintiff to continue her employment with Defendants are the

result of illegal discrimination against her based on her disability . . ." (Court File No. 1 at 4-5). Plaintiff does not address this claim in her brief on summary judgment except to allege generally she was "basically forced and intimidated into taking medical leave" and was "threatened with being intensely supervised and fired" (Court File No. 40 at 2).

The Supreme Court has described a hostile work environment as one "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotations omitted). Such an environment constitutes "discrimination" under the ADA. *See Huge v. GMC*, 62 Fed. Appx. 77, 79 (6th Cir. 2003) (*citing Fox v. GMC*, 247 F.3d 169, 176-77 (4th Cir. 2001)). An ADA plaintiff must prove the following to establish a hostile work environment claim: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *Fox*, 247 F.3d at 177. Because Plaintiff has not shown she is a "qualified individual with a disability," as analyzed *supra*, she cannot meet her burden of proof on an essential element of her claim of hostile work environment. Therefore, she has not made a sufficient showing to overcome Defendant's motion for summary judgment, *see Celotex*, 477 U.S. at 323, and the Court also will **GRANT** Defendant's motion for summary judgment and will **DISMISS** this claim.

    **C.**    **Constructive Discharge**

Finally, Plaintiff claims she was constructively discharged by being forced to take leave

under the Family and Medical Leave Act, under threat of being watched until she made enough mistakes to be fired, in violation of the ADA (*see* Court File No. 1 at 2-3). The elements of a plaintiff's claim she was constructively discharged because of her disability are similar to those she must show on a failure to accommodate claim, and an essential element of this claim, under either the direct or circumstantial evidence method, is that she is "otherwise qualified" for the position despite her disability, either with or without accommodation. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186-87 (6th Cir. 1996). Because, as analyzed thoroughly *supra*, Plaintiff has not shown she was "otherwise qualified" for the position from which she alleges she was constructively discharged, she cannot prove an essential element of her claim, *see Celotex*, 477 U.S. at 323, and the Court also will **GRANT** Defendant's motion for summary judgment and will **DISMISS** this claim.

IV. <u>CONCLUSION</u>

For all of the foregoing reasons, because Plaintiff failed to meet her burden of proof, the Court will **GRANT** Defendant's motion for summary judgment on all of Plaintiff's claims and further will **ORDER** the Clerk to **CLOSE** the case.

_/s/_
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**
